Filed 8/21/15  In re M.O. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| In re M.O., et al., Persons Coming Under the Juvenile Court Law. | C078872 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.T.,<br><br>Defendant and Appellant. | (Super. Ct. No. J06661) |

R.T., mother of the minors M.O. and J.T., appeals from the juvenile court's orders terminating her parental rights.  (Welf. & Inst. Code, §§ 395, 366.26.)[1]  Mother contends the juvenile court violated her due process right to parent her children by terminating her

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

parental rights after the San Joaquin County Human Services Agency (the Agency) failed to "carry out" the court orders for supervised telephone contact with the minors, which in turn precluded mother from asserting the beneficial relationship exception at the section 366.26 hearing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### *Detention, Jurisdiction, and Disposition*

In January 2014, mother and Ru.T. (J.T.'s father) fled their home when law enforcement arrived to conduct a probation search of the property. They left behind three children: I.O. (13 years old),[2] M.O. (10 years old), and J.T. (3 years old). The minors were detained and taken into protective custody. The Agency filed juvenile dependency petitions on their behalf alleging multiple counts including failure to protect the children, failure to provide support for the children, and the parents' history of drug abuse.

On February 4, 2014, the juvenile court assumed jurisdiction over the minors. Mother was not present at the hearing, her whereabouts were unknown.

On March 11, 2014, the juvenile court adopted the Agency's recommendation to bypass reunification services based on mother abandoning the minors. (§ 361.5, subd. (b)(1).) Again, mother was not present at the hearing and her whereabouts were still unknown.

The Agency later learned mother had been arrested on March 7, 2014, and incarcerated in the Santa Clara County Jail. Mother was transported to the Sacramento County Main Jail on March 13, 2014, pending federal criminal charges. Approximately two weeks later, mother contacted the Agency and said she would likely receive an 18 month prison sentence, nine months of which would be served in a drug treatment

---

[2] I.O. is not part of this appeal.

facility, for her crimes. The Agency also heard from the assistant United States attorney prosecuting mother and she indicated the evidence against mother was " 'overwhelming' " and mother would likely serve at least four years in federal prison.

Additional disposition proceedings were held on July 10, 2014, after mother was appointed counsel. The trial court set aside its prior disposition orders and entered new orders denying mother reunification services because she was incarcerated. (§ 361.5, subd. (e)(1).) The court also ordered mother to have scheduled, supervised phone calls with the minors:

"THE COURT: The social worker to go ahead and try and set it up it's a specific time, it's known when.

"[MOTHER'S COUNSEL]: Can we try that weekly, Judge? She doesn't get any physical visits.

"THE COURT: Yeah, I know that. They can set it up at a specific time she's able to make a call where she's at and that would be fine."

The court also set a section 366.26 hearing, as to M.O. and J.T., for November 5, 2015.

II.

*Status Review Hearings*

On August 27, 2014, the social worker assigned to the case reported that she sent a letter to mother asking for specific days they could arrange a phone call between her and the minors, but mother never responded. M.O. and J.T. were placed with relatives and doing well.

At the review hearing on September 10, 2014, mother asked if the minors could visit her in jail. The court rejected her request, but agreed to one supervised phone call every two weeks. The court also learned from county counsel that, since the disposition hearing, mother made an unscheduled and unsupervised phone call to the minors while they were visiting their maternal grandmother. During that call, mother told the children

3

"you're not going to be adopted, you're coming back to live with me." The call did not "go over well" with the minors.

On October 3, 2014, the social worker sent mother an e-mail; mother responded four days later. Mother told the social worker she had been sentenced to six years in federal prison and was being transferred "to another federal penitentiary." Mother said she would contact the social worker once she was transferred so they could schedule mother's supervised telephone calls with the minors. As of November 5, 2014, the minors still had not had telephone contact with mother.

Following that exchange, mother was transferred to a federal prison in Dublin. Three weeks after she was transferred, the social worker advised the juvenile court that mother still had not called the social worker to schedule the supervised telephone calls with the minors. The social worker also advised the court that the relative caretakers would not accept collect calls from prison, so mother would need money to make those phone calls.

The court advised mother's counsel:

"THE COURT: Well, contact your client. I'm not going to change the order I made before. I already made one and indicated she could have that contact. You know, the ball's in her court. The Court— we don't provide additional funds for those calls, unfortunately that's where we're at if the relatives aren't taking collect calls.

"[MOTHER'S COUNSEL]: Doesn't seem quite appropriate, Judge.

"THE COURT: Well, the Court isn't going to meddle with the federal government.

"[MOTHER'S COUNSEL]: No, it's the relatives who the Court has control with.

"THE COURT: No, the Court is not going to order that they take collect calls either."

By February 25, 2015, mother still had not contacted the social worker to schedule her supervised telephone calls with the minors. Mother had, however, been calling the

4

minors' caregivers and trying to talk to the minors. The social worker advised the caregivers not to allow the minors to have phone contact with mother because "the phone calls needed to go through the social worker to be scheduled and supervised."

III.

*Section 366.26 Hearing*

The section 366.26 hearing was held on March 25, 2015. Mother was not present because the state court could not compel the federal court to produce her for the hearing. The contested hearing thus proceeded in her absence. The agency's recommendation was to terminate parental rights and free the children for adoption by their relative caregivers.

M.O. (then 12 years old) testified in chambers at the section 366.26 hearing. He testified that he loved mother and had a "great" relationship with her, but he had not had any contact with her for over six months. M.O. said he wanted to be adopted by his caregivers and he knew they would allow him to see mother after she was released from prison, even if he was adopted.

The social worker testified that it was mother's responsibility to contact her to schedule the supervised phone calls. If mother had contacted her to schedule the supervised calls, the social worker would have arranged the calls. She acknowledged the order for contact did not specifically direct mother to schedule the telephone calls with the social worker; however, the social worker believed mother was required to schedule the calls through her to insure that it was a good time for the minors and the caretakers would be available to monitor the calls.[3]

Mother's counsel argued the Agency and the social worker actively prevented mother from having contact with the minors. As a result, mother was unable to establish the beneficial relationship exception to a plan of adoption. Counsel further argued the

---

[3] In fact, the minute order from the July 10 dispositional hearing says the calls were to be "arranged by" the social worker.

exception should nevertheless be applied, because the minors did have a relationship with mother.

Following argument, the juvenile court found by clear and convincing evidence the minors would be adopted, that terminating parental rights was in the minors' best interest, and termination of parental rights would not be detrimental to either child.

## DISCUSSION

Mother contends the juvenile court violated her due process right to parent the minors "because [she] was improperly prevented from having contact with her children throughout this case, which culminated in the termination of her parental rights." We disagree.

Mother relies on the decision in *In re Hunter S.* (2006) 142 Cal.App.4th 1497 (*Hunter S.*) to support her claim. Mother's reliance is misplaced. In *Hunter S.*, after complaining for over two years that the juvenile court failed to enforce visitation orders against the unwilling minor, the mother filed a section 388 petition seeking to vacate a permanency planning hearing and to reinstate reunification services "to allow her to actually partake of visitation she had been granted but never received." (*Hunter S., supra,* at pp. 1505, 1506 & fn. 5.)

In *Hunter S.*, the court of appeal reversed the juvenile court orders terminating parental rights and denying mother's section 388 petition. (*Hunter S., supra*, 142 Cal.App.4th at p. 1509.) In so doing, the court concluded "the [juvenile] court deprived [the mother] of crucial benefits and protections of the dependency scheme, essentially ensuring the termination of parental rights. Through no fault of her own, [the mother] was denied any opportunity to invoke the 'escape mechanism' of section 388 in order to attempt to lay a foundation to establish the pivotal 'best interests' prong of the essential beneficial relationship exception of section 366.26, subdivision (c)(1)(A), which can only be established through consistent contact and visitation. In short, termination of parental rights was a foregone conclusion." (*Hunter S., supra,* at p. 1508.)

6

Here, mother failed to show that she requested any timely relief (e.g., by filing a section 388 petition seeking enforcement of the existing orders for telephone contact). That fact alone distinguishes this case from *Hunter S.* Moreover, unlike the mother in *Hunter S.*, mother here made little to no effort to exercise her right to have scheduled, supervised telephone contact with the minors.

The Agency, through its social workers, reached out to mother on three separate occasions, asking her to contact them to schedule the supervised telephone calls with the minors. Mother did contact the Agency to tell them she was being transferred but could not schedule her calls then, because she did not know what her schedule would be in the new facility. Mother said she would contact the Agency again once she was transferred, but she did not.

Mother attempted to reach the minors by calling the caregivers directly, but they would not accept her collect calls, and the social worker advised the caregivers not to allow mother to have contact with the children if she called them directly. The juvenile court also advised mother that it could not order the caregivers to accept collect calls and told mother it was her responsibility to make sure those phone calls happened. Again, mother failed to contact the Agency to schedule the calls.

In sum, unlike the mother in *Hunter S.*, the only thing preventing mother from having telephone contact with the minors here was her decision not to schedule calls through the Agency. Had she scheduled calls through the Agency, she would have had the court-ordered contact. On these facts, we conclude the solution was within mother's control and we find no error.

**DISPOSITION**

The orders of the juvenile court are affirmed.

          RENNER         , J.

We concur:

  NICHOLSON     , Acting P. J.

  MURRAY       , J.